FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 12, 2015

ABEL ACOSTA, CLERK

PD-0013-15 & PD-0015-15

PD-0013-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/31/2014 4:19:30 PM
Accepted 1/12/2015 2:02:27 PM
ABEL ACOSTA
CLERK

## NO. 13-13-00665-CR

# TO THE COURT OF CRIMINAL APPEALS

# OF TEXAS

**THE STATE OF TEXAS**                                  **Appellant,**

**v.**

**MICHAEL ERIC RENDON**                          **Appellee.**

Appeal from Victoria County

## STATE'S PETITION FOR DISCRETIONARY REVIEW

STEPHEN B. TYLER
Criminal District Attorney
Victoria County, Texas
Bar I.D. No. 24008186

BRENDAN W. GUY
Assistant Criminal District Attorney
Victoria County, Texas
Bar I.D. No. 24034895
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
(361) 575-0468 (Telephone)
(361) 570-1041 (Fax)

# Table of Contents

Table of Contents.......................................................................................2-3

Index of Authorities ................................................................................4-6

Statement Regarding Oral Argument ........................................................ 7

Statement of the Case...............................................................................7-8

Statement of Procedural History .............................................................. 8

Statement of Facts .................................................................................8-11

Ground for Review.................................................................................. 11

    I.   The Court of Appeals finding that the area outside of
        Appellee's apartment constituted the curtilage of that
        apartment incorrectly decided an important question
        of State and Federal law that has not been but should
        be settled by the Court of Criminal Appeals............................ 11

Argument and Authorities ..................................................................11-19

    I.  The Court of Appeals committed reversible error by
        applying the wrong legal standard for determining
        whether or not the area outside of Appellee's apartment
        constituted an area of curtilage ...............................................11-20

Prayer ...................................................................................................... 21

Signature ................................................................................................. 21

Certificate of Compliance........................................................................ 22

Certificate of Service............................................................................... 23

Appendix ........................................................................................ A-1-A-13

**I.** **Appendix Table of Contents** ......................................................A-1

**II.** **Dec. 4, 2014 Judgment**
**in Cause Number 13-13-00665-CR,**
**State of Texas v Michael Eric Rendon**....................................A-2

**III.** **Dec. 4, 2014 Memorandum Opinion**
**in Cause Number 13-13-00665-CR**
**State of Texas v Michael Eric Rendon**........................A-3 –A-13

# Index of Authorities

## United States Supreme Court Cases

*Florida v. Jardines,* **133 S.Ct. 1409 (2013)** ............. 11, 15, A-6, A-8-A-11, ..................................................................................A-13

*Illinois v. Cabales,* **543 U.S. 405 (2005)** ...................................... **11**

*Oliver v. United States*, **466 U.S. 170 (1984)** ...........................................A-9

*Silverman v. United States*, **365 U.S. 505 (1961)** .................................A-9

*United States v Dunn,* **480 U.S. 294 (1987)** .................................12, 19-20

*United States v. Jones*, **132 S.Ct. 945 (2012)** .....................................A-8

## Federal Court of Appeals Cases

*United States v. Cruz Pagan,* **537 F. 2d 554 (1ˢᵗ Cir. 1976)** .................... **17**

## Texas Cases

*Amador v. State*, **221 S.W. 3d 666 (Tex. Crim. App. 2007)** ................A-7

*Castillo v. State*, **818 S.W.2d 803 (Tex. Crim. App. 1991)** ................. A-11

*Evans v. State,* **995 S.W. 2d 284 (Tex. App. –Houston (14ᵗʰ Dist.) 1999, pet. ref'd)** .......12, 16, A-10-A-11

*Guzman v. State*, **955 S.W. 2d 85 (Tex. Crim. App. 1997)** ................A-7

*McClintock v. State*, **No. PD-0925-13 (Tex. Crim. App. 2014)** ......... A-11

*Rodriguez v. State*, 232 S.W.3d 55 (Tex. Crim. App. 2007) .......A-8, A-12

*State v. McLain*, 337 S.W. 3d 268 (Tex. Crim. App. 2011)...... A-7-A-8, ...............................................................................................A-12

*State v. Rendon,* No. 13-13-00665-CR
(Tex.App.-Corpus Christi, Dec. 4, 2014, pet. filed) ....................8, 13-14, ................................................................................... A-2-A-13

*State v. Rendon,* No. 13-13-00666-CR
(Tex.App.-Corpus Christi, Dec. 4, 2014, pet. filed) ................8, A-3-A-13

*State v. Robinson*, 334 S.W. 3d 776 (Tex. Crim. App. 2011)...............A-7

*State v. Weaver,* 349 S.W. 3d 521 (Tex. Crim. App. 2011) ...................... 12

*Torres v. State*, 182 S.W.3d 899 (Tex. Crim. App. 2005) ................... A-11

## Other States Cases

*Commonwealth v. Thomas,* 358 Mass. 771,
267 N.E. 2d 489 (1971) .............................................................. 17

*Jardines v. State*, 73 So. 3d 34 (Fla. 2011)...........................................A-9

*State v. Nguyen,* 2013 ND 252, 841 N.W. 2d 676 (N.D. 2013)..........16-17

## United States Constitution

U.S. CONST. amend. IV ....................................................11, 18, A-5-A-11

U.S. CONST. amend. XIV ...................................................................A-5

## Texas Constitution

**TEX. CONST. art I, §§ 9** ....................................................... A-5, A-11

**TEX. CONST. art I, §§ 10** ...................................................... A-5

**TEX. CONST. art I, §§ 19** ...................................................... A-5

## Texas Statutes

**TEX. CODE CRIM. PROC. ANN. art 44.01 (West 2014)** ................ A-6

**TEX. HEALTH & SAFETY CODE § 481.121 (West 2010)**.............. A-5

**TEX. PENAL CODE §34.02 (West 2011)** ........................................... A-5

## Texas Rules

**TEX. R. APP. 9.4** ....................................................................... 22

**TEX. R. APP. 47.1** ...................................................................... A-6

**TEX. R. APP. 47.2** ..................................................................... A-13

## No. 13-13-00665-CR

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

**THE STATE OF TEXAS,**.................................................................................**Appellant**

**v.**

**MICHAEL ERIC RENDON,**.........................................................................**Appellee**

\* \* \* \* \*

## STATE'S PETITION FOR DISCRETIONARY REVIEW

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its Criminal District Attorney for Victoria County, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

### Statement Regarding Oral Arguement

Oral argument is waived.

### Statement of the Case

Appellee was charged by indictment on August 2, 2012 in Cause Number 12-8-26805-D with one count of possession of marihuana in an amount of five pounds or less but more than four ounces. [CR-I-1]. On September 13, 2012 the

Appellee filed a motion to suppress. [CR-I-2-4]. On June 14, 2013, the Appellee filed two addition motions to suppress. [CR-I-6-13]. A hearing was held on those motions to suppress on October 30, 2013. [RR-II-1]. On November 26, 2013, the trial court, with the Honorable Robert Cheshire presiding, granted the defense motion to suppress and submitted written findings of fact and conclusions of law explaining his ruling. [CR-I-14]. The State timely filed its notice of appeal on December 3, 2013. [CR-I-23-26]. On December 4, 2014, the Thirteenth Court of Appeals (hereafter Court of Appeals) affirmed the trial court ruling granting the motion to suppress. *State v. Rendon,* No. 13-13-00665-CR & 13-13-00666-CR (Tex.App.-Corpus Christi, Dec. 4, 2014, pet. filed). The Court of Appeals concluded that the narcotics dog sniff in this case occurred from within the curtilage of Appellee's apartment and was therefore an unreasonable search. *Id.* at 7-9.

## Statement of Procedural History

On December 4, 2014, the Thirteenth Court of Appeals upheld the trial court's suppression of evidence. *Rendon,* 13-13-00665 at 11. No motion for rehearing was filed. The State's petition is due January 3, 2015.

## Statement of Facts

The State's first witness at the suppression hearing was Detective Jason Stover of the Victoria Police Department. [RR-II-7]. Detective Stover established

that he was a trained canine operator, and that his canine was properly certified as a drug detection dog.  [RR-II-8-14, State's Exhibit 1].  Detective Stover then stated that he was tasked with investigating Appellee and confirmed that he did obtain a search warrant to enter Appellee's residence as part of that investigation.  [RR-II-15; State's Exhibit 2.]   The search warrant was subsequently admitted into evidence.  [RR-II-21].

Detective Stover further testified as to how on May 8, 2012, he went to Appellee's residence, an apartment located at 901 Bingham, Apartment C, in Victoria, Texas, as part of a drug investigation and how his canine, Baco, alerted on the exterior of the door to the apartment.  [RR-II-16-17].

Detective Stover then elaborated about the layout of the apartment complex, explaining how it is a "four-plex", with two apartments on the bottom, two on the top, and the top having a common stair case that splits off into a balcony to the left and the right.  [RR-II-18].  He also described how the apartment had no gates, or patios, that the stairway was open, that the doors to the apartment grounds were open to the public, and that there were no "no trespassing" signs present on the complex grounds.  [RR-II-18].

Detective Stover went on to describe how, after the investigating officers were denied consent to search Appellee's apartment, he left the grounds to obtain a search warrant which they subsequently executed.  [RR-II-20].

On cross-examination, Detective Stover agreed there were items of personal property on the balcony area in front of the apartments on the second floor. [RR-II-33].

At the conclusion of the State's case, Appellee called one of his neighbors, a Mr. John Crook, as a witness. [RR-II-58]. On cross-examination, Mr. Crook noted that he had the authority to order people off of the apartment, because he works for the manager. [RR-II-73]. He also indicated in regards to people walking up the landings in the apartments that "it's a free world." [RR-II-73]. Then on re-cross, when asked by Appellee if he could keep people from coming to his door, Mr. Crook only indicated that he could keep people from coming into his home. [RR-II-75].

No evidence was presented during the hearing that Appellee had any sort of special authority over the area outside his apartment or that he could exclude other people from that area. [RR-II].

At the conclusion of the suppression hearing, the trial court ruled that while the stairway leading up to the second floor was a common area, the court believed that since Appellee's apartment was the only apartment on the left side of the stairway that the area from the stairway to the apartment was part of Appellee's apartment's curtilage. [RR-II-81]. The court further held that that would invalidate the open air sniff of the apartment and without the evidence obtained as

a result of that sniff, the search warrant issued against the apartment could not stand.  [RR-II-81-82].

On November 26, 2013, the trial court issued a written order granting Appellee's motion to suppress along with written findings of fact consistent with the verbal findings it made at the suppression hearing.  [CR-I-13].

### Ground for Review

**I.  The Court of Appeals finding that the area outside of Appellee's apartment constituted the curtilage of that apartment incorrectly decided an important question of State and Federal law that has not been but should be settled by the Court of Criminal Appeals.**

### Argument and Authorities

**I.  The Court of Appeals committed reversible error by applying the wrong legal standard for determining whether or not the area outside of Appellee's apartment constituted an area of curtilage.**

The United States Supreme Court has established that having a drug detection dog do an open air sniff within the curtilage of a house is search for Fourth Amendment purposes.  See *Florida v. Jardines,* 133 S.Ct. 1409, 1417-1418 (2013).  However, the Supreme Court has also established that when drug detection dogs perform open air sniffs in non-constitutionally protected areas it does not implicate the Fourth Amendment.  See *Illinois v. Cabales,* 543 U.S. 405, 409 (2005)(holding that an open air sniff on an automobile as part of a lawful traffic stop does not implicate the Fourth Amendment.)  The same holds true under Texas

law as this Honorable Court has also recognized that a canine sniff is not a search so long as the officer conducted the sniff from a place they had the right to be. See *State v. Weaver,* 349 S.W. 3d 521, 528-529 (Tex. Crim. App. 2011). Accordingly, the legality of the open air sniff of Appellee's apartment turns entirely on the legal question of whether Detective Stover and Baco were in a curtilage area when they conducted the open air sniff. If they were then the sniff was unreasonable, if not it was lawful and thus the information obtained from that action could be used to support obtaining a search warrant for Appellee's apartment.

The United States Supreme Court has provided guidance in determining when a location is a curtilage area. The test is "whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *United States v Dunn,* 480 U.S. 294, 300 (1987). Common areas of an apartment are therefore not part of the curtilage. See *Evans v. State,* 995 S.W. 2d 284, 286 (Tex. App. –Houston (14th Dist.) 1999, pet. ref'd).

Based upon the Supreme Court's definition of curtilage it is clear that any analysis of if a location is part of a common area of an apartment or is a curtilage area must include a determination of if a party has the power to exclude others from that area. Such a finding is necessary because a party can hardly be said to have a safe harbor for the "privacies of life" in a location where outsiders can lawfully walk right up to them to observe what they are doing there. A party must

have the power to exclude outsiders from an area to be safe to enjoy the privacies of life there and as such a location where a person does not have the power to exclude others can never be a curtilage area. Therefore any analysis of whether a location is part of a curtilage area of an apartment must include a threshold determination of whether the person trying to claim that area as curtilage has the power to exclude others from the area.

The Court of Appeals ruling was fatally flawed because it failed to address the key determining factor of whether Appellee had the power to exclude others from the passageway outside his apartment. The Court of Appeals instead relied upon the fact that Appellee's apartment was the only apartment on the upper-left side of the building and on the fact that other apartment residents at this complex placed objects such as plants or chairs in the area outside of their apartments to establish the disputed area as a curtilage area. *Rendon,* 13-13-00665 at 8. Neither of those factors are relevant though in determining what constitutes a curtilage area and thus they should not have been considered by the Court of Appeals.

Curtilage is not established merely by having the right to store or abandon property in an area. An apartment might allow you to grow flowers in a common area, but that does not mean you can tell others they cannot come along and smell the flowers. The area itself remains common to all people lawfully on the apartment grounds regardless of whether some of your possessions are located in

that area. Nor is curtilage established simply by being the only domicile near a location. The test is not how many neighbors you have, rather it is do you have the right to keep others from entering that area. If you do not have the power to exclude others from entering the area than it does not matter that you are the only apartment located along that passageway. You still do not have a zone of privacy in that location because the location can lawfully be intruded into by others at any time for any reason. It is only the power of exclusion that truly establishes that an area "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." Therefore any analysis of whether an area is in the curtilage or not should first establish whether the claimant has power of exclusion over that area. If they do not have such authority then that location is not part of that curtilage. By failing to consider that threshold question, the Court of Appeals analysis was fatally flawed and must be reversed.

The Court of Appeals analogized the passageway leading to Appellee's apartment with the front-porch of a free standing home. *Rendon,* 13-13-00665 at 8. This analogy was flawed because with a porch on a free-standing home the home owner has total legal authority to tell intruders to get off his porch. The porch is on his property, under his control, and thus he has the same power of exclusion over the porch that he has over his living room. As such since the home owner has control over who has access to the porch, it is perfectly reasonable for it

to be included within the curtilage of his home.

By contrast the apartment dweller does not have comparable authority to tell intruders to depart the passageway even when it is outside his own apartment. Regardless of how close it runs to his apartment the passageway is still a common area of the apartment as open to the public as any other common areas of the apartment, and thus the apartment dweller has no more authority to tell others to leave the passageway than he does to tell others to leave the apartment laundry room. One of the trade offs of living as a renter in an apartment complex is that you generally lack the power to legally exclude that a home owner possesses and thus you cannot claim the same level of privacy interest in the approaches to an apartment that a home owner can claim in the approaches to their home.

Justice Scalia in the *Jardines* case cited the example of a person with a metal detector coming on to your property as being the type of intrusion that is outside of what is socially acceptable. *Jardines,* 133 S.Ct. at 1416. That example can also be used to highlight the critical difference between a home dweller and an apartment dweller in determining the presence of curtilage. A home dweller if confronted by such an errant treasure hunter would be well within their rights to order the person off their property and to have the intruder arrested for criminal trespass if they did not then depart. An apartment dweller though would not generally have that same authority. So long as our hypothetical metal detector wielder (or more likely a Girl

Scout attempting to sell cookies) was otherwise on the apartment grounds legally, and the apartment did not otherwise have rules restricting which common areas guests could enter, then the treasure hunter would have the exact same right to stand outside an apartment door as the apartment dweller them self has. The apartment dweller could certainly ask them to leave and could perhaps call the apartment manager and ask for them to order the person away from their door, but the apartment dweller has no authority themselves to order the person away or to swear out a criminal trespass complaint against the treasure hunter because the apartment dweller does not have control of the area of the apartment beyond their front door. That area is the common area where everyone who is on the apartment grounds legally has equal right to be, and thus cannot be considered part of the curtilage of any apartment dweller's apartment. Allowing people to claim curtilage rights over areas where they do not even have authority over who is allowed to enter would be to dangerously expand the curtilage doctrine and would effective eviscerate the *Evans* principle that the curtilage does not include common areas of apartment complexes.

It must also be noted that other state jurisdictions have already concluded that exclusive control is essential for establishing the existence of a curtilage zone. The Supreme Court of North Dakota noted that "the curtilage of an apartment house does not extend beyond the resident's own apartment and any separate areas

subject to his exclusive control." *State v. Nguyen,* 2013 ND 252, 841 N.W. 2d 676, 682 (N.D. 2013)(emphasis added). The Supreme Judicial Court of Massachusetts held the same and also noted that merely because a tenant has a right to use a common area does not give him a right of privacy in that common area because the tenant does not have exclusive control over the common area. See *Commonwealth v. Thomas,* 358 Mass. 771, 267 N.E. 2d 489, 491 (1971). Furthermore at least one Federal circuit court has also cited a requirement of exclusive control to establish a curtilage zone. See *United States v. Cruz Pagan,* 537 F. 2d 554, 558 (1st Cir. 1976). That is a logical requirement, and Texas should now join with those other jurisdictions in establishing a similar requirement for exclusive control (i.e. the ability to legally exclude others from entering or remaining in the area) as a threshold requirement for establishing a curtilage zone in apartment complexes.

Now obviously there could be situations where an apartment granted control over the passageways to their residents and gave them the authority to exclude others, and if that was done then such an area would constitute the curtilage of that apartment, and it would convey the same protections to its residents that the curtilage area of a house provides to the home owner. However, there is no evidence in the present case that Appellee had any such grant of authority over the area outside his apartment. Quite the contrary: the evidence presented at the hearing established that the apartment dwellers in Appellee's complex did not have

any legal authority to exclude others from the grounds other than from their own apartments. Witness Donald Crook, who testified about life at Appellee's apartment complex, specifically noted that he had the power to order people off of the grounds because he worked for the manager. [RR-II-73]. Thus Mr. Crook made it clear that the authority to exclude unwanted people from the apartment grounds stemmed not from being a tenant at the complex but solely as an exercise of authority as an employee of the apartment complex. Likewise when asked by Appellee if he could keep people from coming to his apartment's door, Mr. Crook instead indicated that his authority was only to keep them from coming into his actual apartment. [RR-II-75]. Thus from Appellee's own witness it was clear there was no authority for tenants at this complex to exclude people from the passageways leading up to their apartments. The tenant's authority of exclusion only covered keeping unwanted visitors from entering into their actual apartments and did not extend beyond that into the areas near but outside of their apartments. Thus since the apartment residents lack any control over the space beyond their apartment, that space must be part of the common area, which means it cannot be considered a curtilage area.

Therefore Detective Stover and Baco were not in a curtilage zone when they conducted their open air sniff, and as such the sniff did not implicate Appellee's Fourth Amendment rights. The investigating officer and his canine partner were

standing in a common area where they had the exact same right to be as Appellee himself, and thus the evidence they obtained from that location was legally obtained, and thus formed a proper basis for supporting the search warrant in this case. The Court of Appeals's decision to the contrary was based upon applying an improper analysis for determining what constitutes a curtilage area since their analysis failed to properly consider the critical factor of whether the claimant had the authority to exclude others from the area.

This petition should therefore be granted, so the Court of Criminal Appeals can definitively establish the proper factors to be considered by lower courts in evaluating whether a location is part of a curtilage area or not. Guidance on this point will decide an important question of state and federal law that has not been but should be settled by the Court of Criminal Appeals. Furthermore, a definite standard on what factors to consider in determining the curtilage area of apartment complexes will give invaluable guidance to law enforcement agents on when they can and cannot legally conduct open air canine sniffs on apartment grounds for future cases which will help guarantee greater efficiency in future law enforcement operations and reduced litigation in the court system. As such it will serve the interests of justice for this petition to be granted. And since the curtilage definition provided by the Supreme Court in the *Dunn* case logically requires that a party have the power to exclude others from an area in order for that area to be

considered curtilage, the State would ask this Honorable Court to definitively establish what is already implicitly required by *Dunn:* that any finding of curtilage on apartment complex grounds must first include a determination that the apartment owner had the legal authority to exclude others from the area claimed to be curtilage. The power to exclude from an area is logically necessary for that area to meet the definition of curtilage established by the United States Supreme Court, and by failing to apply that requirement in this case the Court of Appeals ruling was clearly in error and must be reversed.

# PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, the State prays that this Honorable Court grant this Petition for Discretionary Review and reverse the decision of the Court of Appeals.

**Respectfully submitted,**

**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
Telephone:   (361) 575-0468
Facsimile: 361 (576)-4139

**ATTORNEYS FOR THE APPELLANT,**
**THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in Appellant's Petition for Discretionary Review submitted on December 31, 2014, excluding those matters listed in Rule 9.4(i)(3) is 3,012.

/s/ Brendan W. Guy
**BRENDAN W. GUY**
Assistant Criminal District Attorney
SBN 24034895
205 N. Bridge St., Suite. 301
Victoria, TX 77901
Telephone: (361) 575-0468
Facsimile: 361 (576)-4139

**ATTORNEY FOR APPELLANT,
THE STATE OF TEXAS**

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Petition for Discretionary Review has been served on Edward Bartolomei, Attorneys for Appellee, and on Lisa McMinn, State Prosecuting Attorney, by depositing same in the United States Mail, postage prepaid on the day of December 31, 2014.

**/s/ Brendan W. Guy**
**BRENDAN W. GUY**
Assistant Criminal District Attorney
SBN 24034895
205 N. Bridge St., Suite. 301
Victoria, TX 77901
Telephone: (361) 575-0468
Facsimile: 361 (576)-4139


**ATTORNEY FOR APPELLANT,**
**THE STATE OF TEXAS**

# APPENDIX

## Table of Contents

**Dec. 4, 2014 Judgment
in Cause Number 13-13-00665-CR,
State of Texas v Michael Eric Rendon**......................................................**A-2**

**Dec. 4, 2014 Memorandum Opinion
in Cause Number 13-13-00665-CR
State of Texas v Michael Eric Rendon**..........................................**A-3-A-13**



# THE THIRTEENTH COURT OF APPEALS

---

13-13-00665-CR

---

THE STATE OF TEXAS
v.
MICHAEL ERIC RENDON

---

On Appeal from the
377th District Court of Victoria County, Texas
Trial Cause No. 12-8-26805-D

---

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

December 4, 2014

A-2



**NUMBERS 13-13-00665-CR & 13-13-00666-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**THE STATE OF TEXAS,**                                    **Appellant,**

**v.**

**MICHAEL ERIC RENDON,**                                    **Appellee.**

---

**On appeal from the 377th District Court
of Victoria County, Texas.**

---

# O P I N I O N

**Before Justices Rodriguez, Garza, and Benavides
Opinion by Justice Benavides**

By four issues, which we consolidate into one, the State of Texas appeals the trial court's orders granting appellee Michael Eric Rendon's motions to suppress.[1] We affirm.

---

[1]    These cases have been consolidated for the purposes of this opinion on appeal.

# I. BACKGROUND

On May 8, 2012, Victoria, Texas police officers conducted a drug investigation at an apartment complex located on Bingham Street following a confidential informant's tip. The police's target suspect was Rendon, who was a resident of the apartment complex. Victoria Police Detective Jason Stover and his police-trained dog, Baco, assisted other officers in the investigation.

Detective Stover testified that Baco initially conducted a warrantless "open-air sniff" of the exterior of Rendon's parked vehicle, which was located in the apartment complex's parking lot. Following the sniff, Baco exhibited a "positive alert to the presence of narcotics." At that point, other Victoria police officers approached Rendon's apartment, but Rendon exited his apartment and greeted the officers before they were able to knock on his apartment door.[2]

The other officers spoke to Rendon outside of his apartment, and the officers later advised Detective Stover "by radio" to approach Rendon's residence with Baco. Detective Stover and Baco arrived at Rendon's apartment door, and Baco again conducted a warrantless sniff of the apartment's door and "alerted [Detective Stover] to the odor of illegal narcotics." After the positive alert, Detective Stover returned Baco to his police unit and joined the other officers outside of Rendon's apartment. Police officers then requested Rendon's consent to search his apartment, but Rendon declined. Detective Stover testified that because Rendon declined consent to search his

---

[2] The record establishes that the rectangular building holds four separate apartment units over two floors. The first two units are located on the ground floor, and the remaining two units are located on the second floor. A straight continuous staircase leads visitors and residents to the second floor. At the stairway's landing, the path splits left and right. Each second-floor apartment has a patio area immediately in front of its doorway. Rendon's apartment was located on the left side of the second floor.

apartment, he applied for a search warrant of Rendon's apartment and vehicle. In his search warrant application affidavit, Detective Stover noted Baco's "positive" alerts to the odor of narcotics from the "open-air sniff" outside of Rendon's vehicle, as well as after sniffing the "bottom left portion" of Rendon's apartment door. Detective Stover's application for the search warrant was granted by a magistrate and executed the same day.

The record is unclear as to what exactly was seized from Rendon's vehicle or apartment following the execution of the search warrant. However, in appellate cause number 13-13-00665-CR, a Victoria County grand jury indicted Rendon for possession of marijuana in an amount of five pounds or less but more than four ounces, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West, Westlaw through 2013 3d C.S.). In appellate cause number 13-13-00666-CR, the same grand jury indicted Rendon for money laundering, a state jail felony. *See* TEX. PENAL CODE ANN. § 34.02(e)(1) (West, Westlaw through 2013 3d C.S.).

After his arrest, Rendon was charged with possession of marijuana and money laundering and filed a motion to suppress in each respective case. Rendon sought to suppress, in relevant part, any and all evidence that was seized by the Victoria Police Department pursuant to the execution of Detective Stover's search warrant. Rendon attacked the warrant on Fourth and Fourteenth Amendment grounds, *see* U.S. CONST. amends IV, XIV, as well as under Article I, Sections 9, 10, and 19 of the Texas Constitution. *See* TEX. CONST. art. I, §§ 9, 10, 19. Specifically, Rendon asserted that Detective Stover's affidavit lacked probable cause to support the search and arrest. At the consolidated suppression hearing, Rendon's counsel argued that Baco's sniff of

Rendon's apartment door was an unconstitutional search under the Fourth Amendment, and thus, insufficient probable cause supported the warrant. The trial court agreed and granted Rendon's motions.

In its identical orders granting Rendon's motions to suppress, the trial court issued findings of fact and conclusions of law and found that Baco searched the "curtilage" of Rendon's apartment and that such a search was illegal under the Fourth Amendment, citing *Florida v. Jardines*, 133 S.Ct. 1409, 1417–18 (2013). The trial court further concluded that after excluding the tainted search from Detective Stover's affidavit, the remaining information did not establish probable cause to issue a warrant to search Rendon's apartment. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II. MOTION TO SUPPRESS

By one consolidated issue, the State asserts that the trial court erred by granting Rendon's motions to suppress.[3]

### A. Standard of Review

We review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by

---

[3] The State presented four issues for our review. For brevity, we will address each of the four issues under one analysis. *See* TEX. R. APP. P. 47.1. The State's original four issues were stated as follows:

(1) Is the standard of review in this case de novo?

(2) Is the passageway leading up to an apartment part of the common area of the apartment or part of the curtilage of the apartment?

(3) Did the trial court commit reversible error by finding that [Rendon] had met his burden to show that the search warrant against him was invalid?

(4) Did the State procedurally default by not asserting that the passageway from the stairway to [Rendon's] apartment was not part of the curtilage at the trial level?

the trial court and review de novo the trial court's application of the law to those facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We afford the same amount of deference to trial courts' rulings on application of law to fact questions, also known as "mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police conduct. *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). He may carry this burden by establishing that the search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to prove the reasonableness of the search or seizure. *Id.*

## B.    Discussion

We first examine whether Rendon carried his burden to rebut the presumption of proper police conduct. Rendon argues that the affidavit presented to the magistrate lacked probable cause because it was based on an unconstitutional sniff by Baco, and the remaining information in the affidavit was erroneous and insufficient to support a finding of probable cause.

A magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *McLain*, 337 S.W.3d at 272. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specific location. *Id.*   When the trial court determines whether probable cause exists to support the

issuance of a search warrant, there are no credibility determinations; rather, the trial court is constrained to the four corners of the affidavit. *Id.* at 271. When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant. *Id.* As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Id.*

An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants are to be preferred over the hurried action of officers who may happen to make arrests." *Id.* at 272. When reviewing the issuing magistrate's determination, we interpret the affidavit in a commonsensical and realistic manner, rather than a hypertechnical manner, recognizing that the magistrate may draw reasonable inferences. *Rodriguez v. State*, 232 S.W.3d 55, 59–61 (Tex. Crim. App. 2007).

### 1. Dog Sniff

Rendon first argues that the State lacked probable cause to obtain a search warrant because the basis for the warrant was an unconstitutional search by Detective Stover with Baco at Rendon's door. The United States Supreme Court recently addressed the constitutionality of the use of drug-sniffing dogs in *Florida v. Jardines*. 133 S.Ct. at 1414–18. In *Jardines*, the Court reiterated that "when 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred." *Id.* at 1414 (quoting *United States v. Jones*, 132 S.Ct. 945, 950–51 n.3 (2012)). The *Jardines* Court further noted that when it comes to the Fourth

Amendment, the home is "first among equals," because at the Amendment's "very core," stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

Additionally, the United States Supreme Court has recognized that the "curtilage," or the area immediately surrounding and associated with the home, is "'part of the home itself for Fourth Amendment purposes.'" *Id.* (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The Court noted that "[w]hile the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.'" *Id.* (quoting *Oliver*, 466 U.S. at 182, n.12). Utilizing these principles, the *Jardines* Court upheld the Florida Supreme Court's holding that the Miami-Dade Police Department's use of trained police dogs to investigate a home and its immediate surroundings was a "search" within the meaning of the Fourth Amendment that was unsupported by probable cause, rendering the warrant invalid. *See id.* at 1417–18; *see also Jardines v. State*, 73 So.3d 34, 55–56 (Fla. 2011).

We now turn to the facts of the present case. Detective Stover's testimony reveals that he used Baco to conduct a warrantless search of Rendon's apartment door at the request of other officers who were speaking to Rendon at the time outside of Rendon's apartment. Detective Stover provided no other reason to support the warrantless search. Rendon argues that this sniff search occurred in the curtilage of his apartment, and was, thus, unreasonable under *Jardines* and the Fourth Amendment. The State argues that because Baco's sniff occurred in the passageway leading up to

Rendon's apartment, it was a "common area" of the apartment complex and not protected by the Fourth Amendment. We agree with Rendon.

According to Detective Stover's testimony and affidavit requesting a search warrant, Baco sniffed the "bottom left portion" of Rendon's apartment door and indicated the odor of narcotics "from within" Rendon's apartment. However, facts from the record support Rendon's curtilage argument, including that (1) Rendon's apartment was the only apartment on the upper-left side of the building; (2) Rendon's neighbor, John Crook, who lives in the apartment on the upper-right side of the building, testified that he hangs plants along the railing in front of his apartment; and (3) Defendant's Exhibit 3, a photograph of Rendon's apartment building taken from the parking lot, depicts that Rendon's downstairs neighbor has chairs in the area immediately in front his apartment as well. Logically, this means that at the time of Baco's sniff, Rendon's door was closed, and the sniff occurred immediately in front of the apartment's door. Based on this record, we conclude that the area immediately in front of Rendon's apartment is no different from the front porch of a free-standing home. Thus, bringing a trained police dog to sniff the bottom left portion of Rendon's apartment door in hopes of discovering incriminating evidence exceeded the scope of any express or implied license allowed under the Fourth Amendment. *See Jardines*, 133 S.Ct. at 1416 (noting that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.").

The State misplaces its reliance on our sister court's holding in *Evans v. State*, 995 S.W.2d 284, 285–87 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) to support its "common area" argument. We find *Evans* distinguishable and inapplicable. In *Evans*,

the appellant sought to suppress evidence obtained from a search of her apartment on the basis that officers entered her apartment complex's common areas in an unauthorized manner. *Id.* at 286. The present case does not deal with the common areas of an apartment complex, as discussed in *Evans*, such as parking lots and sidewalks, but rather the curtilage of Rendon's apartment. Therefore, we hold that police conducted an unreasonable search by using a trained police dog to investigate the curtilage of Rendon's apartment. *See* U.S. CONST. IV; TEX. CONST. art. I, § 9; *see also Jardines*, 133 S.Ct. at 1417–18.

### 2. Residual Probable Cause

Despite our holding that police conducted an unreasonable search of Rendon's home and used the tainted search results to establish probable cause in order to obtain a search warrant, we must continue our inquiry and "put aside all tainted allegations" to determine whether the remaining independently acquired and lawful information stated in the affidavit clearly established probable cause. *See McClintock v. State*, \_\_\_ S.W.3d\_\_\_, No. PD–0925–13, at *3 (Tex. Crim. App. Oct. 1, 2014) (recognizing the principle of "residual probable cause" as stated in *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005)).

In the remainder of his probable cause affidavit, Detective Stover stated that Victoria police officers conducted a drug investigation at Rendon's apartment complex on May 8, 2012. Detective Stover stated that in the parking lot of the complex, Baco conducted a sniff test upon a parked white Coors Lite Hartman Distributing Chevrolet HHR and a parked red four-door Cadillac. According to the affidavit, Baco displayed an

"extreme change in behavior and breathing" when he sniffed the Chevrolet vehicle, indicating a "positive alert to the odor of narcotics from within." Detective Stover also provided the following information in his affidavit:

> Prior to [the May 8, 2012] investigation, a confidential informant working under the direction [sic] purchased a large amount of cocaine from an individual whose supplier arrived from another location to the buy location. On the first purchase of cocaine, the supplier showed up in a red 4 door vehicle. The surveillance vehicle was too far away at this time to make out the model of the vehicle.
>
> During the second buy, a Hartman Distributing HHR showed up and supplied cocaine to the "middle man" who in turn was given the money for the cocaine by the confidential informant.
>
> A license plate was obtained off of the Harman Distributing [sic] by SCU personnel. Sgt. Jameson contacted the owner of Hartman Distributing and requested to know who had been driving the vehicle on this date. The owner advised that Michael Rendon had been driving the vehicle on the date of the confidential informant's purchase of cocaine.
>
> Surveillance was conducted on this location following this information being provided. At this time, SCU personnel learned that Michael Rendon also owned and operated a red 4 door Cadillac.

After reviewing the four corners of the affidavit "in a commonsensical and realistic manner," *see Rodriguez*, 232 S.W.3d at 59–61, and giving the appropriate deference to the magistrate, *see McLain*, 337 S.W.3d at 271, we cannot conclude that the remaining "independently acquired and lawful information stated in the affidavit" clearly establishes probable cause to search Rendon's apartment. After setting aside Baco's sniff of Rendon's apartment door, the remaining allegations contained in Detective Stover's affidavit focus on establishing Rendon's identity and his use of the Chevrolet vehicle to transport drugs. Nothing in the remainder of the affidavit establishes that under the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found inside of Rendon's apartment. *See id.* at 272. Therefore, we

conclude that the magistrate did not have a substantial basis for concluding that probable cause existed to search Rendon's apartment.

### 3. Summary

In sum, we conclude that Rendon met his burden to rebut proper police conduct. Under *Jardines*, Detective Stover conducted an unreasonable search of Rendon's home by entering the curtilage of Rendon's apartment and using a trained dog to sniff Rendon's door to find incriminating evidence. Furthermore, after "putting aside" the information derived from the dog sniff from the search warrant affidavit, we cannot conclude that the affidavit clearly established probable cause to search Rendon's apartment. Without probable cause, the search warrant was invalid. The State's sole issue on appeal is overruled.

## III. CONCLUSION

We affirm the trial court's orders granting Rendon's motions to suppress.

_____
GINA M. BENAVIDES,
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
4th day of December, 2014.